IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br>FLOYD, BENJAMIN ADAM,<br>　　　　　　　　　Debtor, | Case No. 23-10158 SAH<br>Chapter 7 |
| UNITED STATES TRUSTEE,<br>　　　　　　　　　Plaintiff,<br>vs.<br>FLOYD, BENJAMIN ADAM,<br>　　　　　　　　　Defendant. | Adversary No. |

**COMPLAINT TO DENY THE DEBTOR'S DISCHARGE**

Plaintiff, Ilene J. Lashinsky, United States Trustee ("**UST**"), brings this complaint against the debtor-defendant, Benjamin Adam Floyd ("**Debtor**" or "**Floyd**"), for violation of section 727(a) of the Bankruptcy Code.

**A.    Jurisdiction and venue.**

1.    The Debtor initiated the above captioned bankruptcy case by filing a voluntary bankruptcy petition on January 25, 2023 (the "Petition Date").

2.    On May 4, 2023, the Court entered an Order extending the time for the UST to file discharge related complaints "90 days from and after April 24, 2023." [Doc. 36]. As this Complaint is filed before July 23, 2023, it is timely filed under Fed. R. Bankr. P. 4004.

3.    The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 & 1334.

4.    This is a core proceeding by reason of 28 U.S.C. § 157.

5.    Venue of this proceeding is proper in this district under 28 U.S.C. § 1409.

6.    The UST consents to the entry of final orders or judgment by this Court.

1

**B.     Common facts.**

*Debtor's Pre-Bankruptcy History and Schedules*

7.    Debtor is a licensed realtor who has owned several businesses, including a real estate brokerage that at one time employed approximately 40 realtors.

8.    Debtor filed a "bare bones" Chapter 7 bankruptcy on January 25, 2023. (Doc. 1)

9.    He filed his full bankruptcy schedules ("**Schedules**") and his Statement of Financial Affairs ("**SoFA**") on February 8, 2023. (Doc. 14)

10.    Neither Debtor's Schedules nor SoFA disclose ownership of mineral interests.

11.    Debtor's Schedule A/B Item 6 "Household goods and furnishings" does not disclose valuable antique furniture.

12.    Neither Schedule A/B Item 6 "Household goods and furnishings" nor Item 9, "Equipment for sports or hobbies," disclose ownership of any gun safes. (Doc. 14, p. 7)

13.    Debtor declared in Item 10 of his Schedule A/B that he did not own any firearms, ammunition, or related equipment (Doc. 14, p. 7):

> 10. Firearms
> *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
> ☑ No
> ☐ Yes. Describe..........                                                                                       $_____

14.    Debtor declared in Item 42 of his Schedule A/B that the only company in which he owned an interest was 525 Realty Group, LLC (Doc. 14, p. 12):

> 42. Interests in partnerships or joint ventures
> ☐ No
> ☑ Yes. Describe......... Name of entity:            % of ownership:
>                          525 Realty Group, LLC      100 %      $         0.00

15.    SoFA Item 27 required Debtor to list all companies in which he held an interest in the four years before bankruptcy. Here Debtor again represented under oath that his only corporate ownership interest was in 525 Realty Group, LLC. (Doc. 14, p. 41)

2

16. SoFA Item 22 required Debtor to disclose whether he stored his assets any "place other than your home within 1 year before…" bankruptcy. Debtor testified "No." (Doc. 14, p. 40)

17. Schedule I Income lists no income at all for Debtor. (Doc. 14, p. 26)

18. SoFA Item 4 and 5 declare Debtor received no income from January 1, 2023, to the Petition Date. (Doc. 14, p. 32)

19. SoFA Item 20 does not disclose any financial accounts that were closed within the one year before bankruptcy. (Doc. 14, p. 39)

**Debtor's First Meeting of Creditors:**

20. Debtor's 341 Meeting of Creditors was set for February 21, 2023 (the "**First MOC**"), before Kevin Coffey, Debtor's chapter 7 trustee ("**Mr. Coffey**").

21. At the First MOC, Floyd testified under oath that, among other things:

- he read and reviewed all the information contained in his Schedules and SoFA before he signed them and before they were filed;
- his Schedules and SoFA were true and correct;
- there were no mistakes, errors, or omissions in the Schedules or SoFA; and
- he listed all his property and assets.

22. At the First MOC, Mr. Coffey asked Debtor about several deposits into his checking account totaling more than $10,000.00 that occurred between January 1, 2023, and the Petition Date that he discovered in Debtor's banking records.

23. Floyd testified that (i) these payments came from his two companies 525 Realty Group and Edinboro Point, LLC, and (ii) the payments "were not anything out of the ordinary."

24. Floyd omitted ownership in Edenborough Pointe, LLC in his Schedules or SoFA.

25. Floyd did not disclose his ownership or control over the 525 Realty Group bank account or Edenborough Pointe, LLC bank account from which he paid himself undisclosed income in is Schedules or SoFA.

3

26. After conducting the MOC, Mr. Coffey continued the meeting to April 12, 2023 (the "**Second MOC**"), to further evaluate the case and obtain identification information.

*Debtor's Second Meeting of Creditors:*

27. During the Second MOC, Debtor adamantly testified for over 10 minutes in response to numerous pointed questions from Mr. Coffey that he only owned two firearms on the Petition Date: a conceal carry size 9mm semi-automatic pistol and a .308 caliber bolt action hunting rifle.

28. Debtor further testified that he owned a total of 40 rounds of ammunition for the pistol, and no other ammunition on the Petition Date.

29. Mr. Coffey directed Debtor to amend Schedule A/B to disclose the two firearms.

30. Toward the end of the Second Meeting of Creditors, Mr. Coffey told Debtor explicitly that he had information regarding firearms and other assets that Debtor failed to disclose.

31. Debtor was then questioned by Chris Wood, counsel for Debtor's wife. Mr. Wood asked whether Debtor owned significant antique furniture.

32. Debtor admitted only after Mr. Wood's questioning that he did own *multiple* pieces of antique furniture, some of which had been formally appraised at over $6,000.00.

33. Mr. Coffey then requested Debtor to amend his Item 6 of his Schedule A/B to disclose the antique furnishings.

34. Mr. Wood then questioned Debtor about a "substantial" number of guns he owned that were moved to his mother's house within the year before bankruptcy. Debtor then became flustered and belligerent, and stated he would make a list of all the guns that he owned that were or had been at his mother's house.

35. Mr. Wood then inquired whether Debtor had stored a "substantial" amount of ammunition stored at his mother's house. Debtor responded, "there's some ammo there, yes." He also stated he would make an inventory of ammunition Debtor had stored at his mother's house.

36. Mr. Coffey then asked Debtor why he changed is testimony and asked him to admit he had lied during his testimony:

> **Mr. Coffey:** No, I just want to make sure we that are clear because my earlier record says one thing and the record now says something else. I want to make sure the reason is because you were lying to me before, correct?
>
> (Pause because no response from Debtor)
>
> Benjamin, you were lying to me before, correct?
>
> **Debtor:** I was emotional, and I didn't tell you the truth and I apologize, sir.
>
> **Mr. Coffey:** What's the difference between not telling the truth and lying?
>
> **Debtor:** There's not sir, and I apologize, I'm sorry.

37. Mr. Coffey then continued the Second MOC to May 17, 2023 (the "**Third MOC**").

*Debtor's Third Meeting of Creditors:*

38. During the Third MOC, Mr. Coffey noted that Debtor had sent information that was not included in his Schedules or SoFA, but told Debtor he had to file amended Schedules and SoFA to fulfill his obligations in bankruptcy.

39. Debtor's bankruptcy counsel had withdrawn prior to the Third MOC (see Doc. 34, 35, & 39), and Debtor had not yet found new counsel.

40. Consequently, Mr. Coffey continued the Third MOC to July 12, 2023 (the "**Fourth MOC**").

*Debtor's Amended Schedules and SoFA:*

41. Gary Hammond entered his appearance for Debtor on June 28, 2023. (Doc. 47, 48)

5

42. On July 11, 2023, the day before the Fourth MOC, Debtor filed his Amended Schedules and SoFA (the "**Amended Schedules**" and the "**Amended SoFA**"). (Doc. 49)

43. Amended Schedule A/B Item 6 increased the value of Debtor's "Household goods and furnishings from $5,000.00 to only $10,000.00. However, it did not itemize Debtor's antique furniture or disclose that Debtor owned any gun safes. (Doc. 49, p. 3)

44. Amended Schedule A/B Item 10 "Firearms" admitted Debtor did own more than two guns (Doc. 49, p. 4):

```
10. Firearms
    Examples: Pistols, rifles, shotguns, ammunition, and related equipment
    ☐ No
    ☑ Yes. Describe. ........  Assortment of rifles, pistols and shotguns.          $6,000.00
```

45. Amended Schedule A/B Item 19, interests in businesses, changed Debtors response of "No" to disclosing ownership of 525 Realty Group, LLC, Benjamin Floyd Homes, LLC, and Edenborough Pointe, LLC. (Doc. 49, p. 5)

46. Amended Schedule A/B Item 35, on a "Continuation Page" discloses that Debtor (i) owns "1/10 Mineral Rights in Caddo County, and (ii) receives annual payments from Keller Williams (Doc. 49, p. 12):

```
35.  Any financial assets you did not already list
     1/10 Mineral Rights in Caddo County (Last payment
     received was for less than $10 and approximately 10 years
     ago.)                                                                $0.00

     Debtor receives an annual amount from Keller Williams
     from profits of employees Debtor recruited for Keller
     Williams. Debtor expects $300-400 per year.                          unknown
```

47. Neither Amended Schedule I nor Amended SoFA rectified Debtor's omission of income from January 1, 2023, to the Petition Date. (Doc. 49, p. 23)

48. Amended SoFA Item 22 declares that Debtor stored assets at a Storage Ranch location, but it does not disclose that Debtor stored assets at his mother's house as he testified in his Second MOC. (Doc. 49, p. 30)

49. Amended SoFA Item 27 declares additional corporations Debtor held an interest in (Doc. 49, p. 32):

- 525 Realty Group, LLC
- Benjamin Floyd Homes, LLC
- Edenborough Pointe, LLC
- RAF Investments, LLC

50. Amended SoFA for the first time declares that Debtor closed a Tinker Federal Credit Union checking account in November 2022. (Doc. 49, p. 29)

***Debtor's Fourth Meeting of Creditors:***

51. Mr. Hammond was present with Debtor at the Fourth Meeting of Creditors.

52. Mr. Coffey requested that Mr. Hammond amend Amended Schedule A/B Item 10 to individually list each firearm owned by Debtor, as well as an itemization of ammunition, and related equipment such as gun safes.

53. Debtor for the first time disclosed a second gun safe he owned located in his garage, the size of which was approximately three feet, by three feet, by five feet.

54. Mr. Coffey continued the Fourth MOC to August 1, 2023, to give Debtor time to (i) turn over the written appraisals of Debtor's antique furniture, (ii) turn over Debtor's homeowner's insurance policy, (iii) turn over pictures of Debtor's two gun safes, and (iv) amend Debtor's Amended Schedules to itemize each firearm.

***Debtor's Second Amended Schedules and SoFA:***

55. On July 19, 2023, Debtor filed his second set of Amended Schedules and SoFA (the "**Second Amended Schedules**" and "**Second Amended SoFA**"). (Doc. 50)

56. Second Amended Schedule A/B Item 6, on a "Continuation Page" now discloses that Debtor owns "2 Gun safes" valued collectively at $600.00. (Doc. 50, p. 12)

57.     Second Amended Schedule A/B Item 10 "Firearms" now says "see attached," and lists the following firearms and ammunition (Doc. 49, p. 13):

| Quantity | Firearms |
|---|---|
| 1 | Thompson 390 |
| 1 | Smith & Wesson AR-10 |
| 1 | 12-gauge Browning |
| 1 | Remington Model 700 |
| 1 | Baretta 16 gauge over/under |
| 1 | 12 gauge Remington Shotgun |
| 1 | Topper Model 490 |
| 1 | 12 gauge (Unknown make) single shot shotgun |
| 1 | Sigsour AR |
| 1 | Curcyut 1900's (Inoperable) |
| 1 | Smith & Wesson AR 15 |
| 2 | AR 22 |
| 1 | Lower Action 30-06 |
| 1 | Glock 19 pistol |
| 1 | Torns Judge pistol |
| 1 | Browning 22 pistol |
| 1 | Sringfield 9mm |
| 1 | Smth & Wesson 9 mm |

| Quantity | Ammunition |
|---|---|
| 200 | 12 gauge |
| 1600 | 223 |
| 200 | 9mm |
| 20 | 280 |
| 40 | 43 |
| 28 | 308 |
| 5000 | 22 |
| 50 | 45 |

58.     Neither Second Amended Schedule I nor Second Amended SoFA rectify Debtor's omission of income from January 1, 2023, to the Petition Date.

8

## FIRST CAUSE OF ACTION
## 11 U.S.C. § 727(a)(2)

59. 11 U.S.C. § 727(a)(2) states:

   **(a)** The court shall grant the debtor a discharge, unless—
   …
   **(2)** the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —

   **(A)** property of the debtor, within one year before the date of the filing of the petition; or

   **(B)** property of the estate, after the date of the filing of the petition;

60. The UST re-adopts and re-alleges each paragraph above, and further alleges:

61. Debtor knowingly concealed his ownership of mineral interests.

62. Debtor knowingly concealed his ownership of gun safes until questioned by Mr. Coffey and Mr. Wood during his Second MOC.

63. Debtor knowingly concealed ownership of all firearms from his original Schedules and SoFA.

64. Although Debtor testified that he owned one pistol and one bolt-action rifle at his Second MOC, Debtor knowingly concealed at least 16 additional firearms until directly questioned by Mr. Coffey and Mr. Wood about such assets during his Second MOC.

65. Debtor concealed ownership in approximately 7138 rounds of ammunition until directly questioned by Mr. Coffey and Mr. Wood about such assets during his Second MOC.

66. Debtor admitted to lying in his testimony to conceal his ownership of the 16 additional firearms and approximately 7138 rounds of ammunition at his Second MOC.

67. Debtor knowingly concealed ownership in at least Benjamin Floyd Homes, LLC and Edenborough Pointe, LLC in at least his Schedules and SoFA.

68. Debtor knowingly concealed income he paid himself from at least 525 Realty Group, LLC and Edenborough Pointe, LLC from January 1, 2023, to the Petition Date. Debtor only disclosed this income after Mr. Coffey directly questioned him about deposits into his checking account during the First MOC.

69. Debtor knowingly concealed ownership of valuable antique furniture until directly questioned about the assets by Mr. Wood at the Second MOC.

70. Debtor knowingly concealed his receipt of, and right to receive in the future, ongoing commission-like annual payments from Keller Williams.

71. The UST reserves the right to supplement this Complaint with additional concealed assets as discovery is conducted during this adversary proceeding.

72. In light of the above, Floyd, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under Title 11, has transferred, removed, or concealed, or has permitted to be transferred, removed, or concealed the above-described property of the Debtor within one year before the Petition Date.

73. In light of the above, Floyd, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under Title 11, has transferred, removed, or concealed, or has permitted to be transferred, removed, or concealed the above property of the estate after the Petition Date.

### SECOND CAUSE OF ACTION
### 11 U.S.C. § 727(a)(4)

74. 11 U.S.C. § 727(a)(4) states:

> **(a)** The court shall grant the debtor a discharge, unless—
> …
> **(4)** the debtor knowingly and fraudulently, in or in connection with the case—
> **(A)** made a false oath or account;

10

75. The UST re-adopts and re-alleges each paragraph above, and further alleges:

76. Debtor willfully and knowingly failed to disclose all information required by his Schedules and SoFA; his (i) execution of the Declaration concerning the Debtor's Schedules under penalty of perjury, and (ii) various MOC testimony, constitute false oaths in violation of 11 U.S.C. § 727(a)(4)(A) as follows:

**Concealed Interest in Real Property:**

77. Debtor knowingly and fraudulently concealed ownership of mineral interests.

**Concealed Interest in Personal Property:**

78. Debtor knowingly and fraudulently concealed ownership of gun safes.

79. Debtor knowingly and fraudulently concealed ownership of 18 firearms.

80. Debtor knowingly and fraudulently concealed ownership of approximately 7138 rounds of ammunition.

81. Debtor knowingly and fraudulently concealed ownership of multiple limited liability companies.

82. Debtor knowingly and fraudulently concealed income from at least January 1, 2023, to the Petition Date.

83. Debtor knowingly and fraudulently concealed the closure of a financial account at Tinker Federal Credit Union in the year prior to bankruptcy.

84. Debtor knowingly and fraudulently concealed ownership of valuable antique furniture.

85. Debtor knowingly and fraudulently concealed his receipt of, and continuing right to receive, annual payments from Keller Williams.

86. Debtor knowingly and fraudulently concealed his use of Storage Ranch and his mother's house as places to store assets within one year prior to bankruptcy.

**Additional False Testimony:**

87. At the First MOC, Floyd knowingly and falsely testified under oath that, among other things:

- he read and reviewed all the information contained in his Schedules and SoFA before he signed them and before they were filed;
- his Schedules and SoFA were true and correct;
- there were no mistakes, errors, or omissions in the Schedules or SoFA; and
- he listed all of his property and assets.

88. Despite Floyd's false testimony, Floyd knew he had concealed the assets discussed above from his Schedules and SoFA, and that those documents were not true and correct.

89. Despite Floyd's false testimony, Floyd knew his Schedules and SoFA contained omissions.

90. Despite Floyd's false testimony, Floyd knew his Schedules and SoFA did not list all of his assets.

91. Floyd admitted to giving false oaths regarding his ownership of assets during his Second MOC.

92. Each of Debtor's acts of concealment and perjured testimony detailed above constitute a false oath, all in violation of 11 U.S.C. § 727(a)(4)(A).

93. The UST reserves the right to supplement this Complaint with additional false oaths as discovery is conducted during this adversary proceeding.

**PRAYER FOR RELIEF**

Wherefore, based upon the foregoing, the UST Requests that this Court enter judgment against Defendant-Debtor, Benjamin Adam Floyd, blocking the Debtor's discharge for violation of 11 U.S.C. §§ 727(a)(2) and (a)(4); and granting such other and further relief as this Court deems just and equitable.

Respectfully submitted,

ILENE J. LASHINSKY
UNITED STATES TRUSTEE

MARJORIE J. CREASEY
ASSISTANT UNITED STATES TRUSTEE


s/ Jeffrey E. Tate
Marjorie J. Creasey, OBA #17819
Jeffrey E. Tate, OBA #17150
OFFICE OF THE UNITED STATES TRUSTEE
215 Dean A. McGee, Room 408
Oklahoma City, OK  73102
(405) 231-5961
(405) 231-5958 (fax)
Marjorie.Creasey@usdoj.gov
Jeff.Tate@usdoj.gov
Attorney for Plaintiff